W. H. RUSSE et al., Appellants, v. R. E. HENDRICKS, Respondent.

St. Louis Court of Appeals, May 10, 1898.

1. **Contract**: TITLE TO PERSONAL PROPERTY: ORAL TESTIMONY INCOMPETENT TO VARY OR CONTRADICT A WRITTEN STIPULATION. Where a written contract expressly provides that the title to a lot of lumber should vest in a party absolutely, when the lumber was measured, accepted, marked and the first instalment of the purchase price paid, it is incompetent to vary or contradict this stipulation by oral testimony.

2. ———: ———: REPLEVIN: EQUITIES. While it is true that in replevin suits the equities of the parties to the suit may be adjusted, by this is meant only that all claims or liens on the *property itself* will be considered and their priorities determined.

*Appeal from the New Madrid Circuit Court.*—HON. HENRY C. RILEY, Judge.

REVERSED AND REMANDED.

R. B. OLIVER, JAS. N. COURAN and J. J. RUSSELL for appellant.

The plaintiffs claim this lumber under their contract with and bills of sale from King. The undisputed testimony shows that this lumber was a part of the lumber marked "Russe & Burgess," paid for by them, and included in their contract and bills of sale. So that the plaintiffs must recover unless the defendant was entitled to the possession. The defendant claims that he has the right to the possession, as constable by virtue of the attachment proceedings of certain creditors of King, who sued him upon due bills given for the stumpage, or purchase price of timber. This we deny. A vendor has no lien after he parts with

possession. Conrad v. Fisher, 37 Mo. App. 382. As we view this case the sole question here presented is who was the owner of the property at the time of the attachments. If it was King's, we must lose. But if it was not King's the defendant must lose. If this was our lumber we had the right either to interplead or replevy. There was no effort to show that this lumber belonged to King when attached, and we assume that it will be readily admitted that it belonged to the plaintiffs as between the plaintiffs and King, but they will only insist that the attaching plaintiffs had a lien on it. They will hardly claim that they own it themselves, as they had it attached as King's property. If they had owned it they would have replevied, and not brought suit to sell it to pay King's debts. Neither did they bring suit to enforce a lien, which in the absence of a statutory remedy is necessary. Price v. Roetzell, 56 Mo. 500; Tony v. Goodley, 57 Mo. App. 242; Babka v. Eldred, 47 Wis. 189; Demas v. Conrad, 40 N. W. Rep. 799; Wilson v. Barnard, 67 Cal. 422; Pine Log v. Sias, 43 Mich. 356; Hinckley v. Gilmore, 49 Me. 59. They had no statutory lien, and there can be no common law lien without possession, which they did not have. 13 Am. and Eng. Ency. of Law, pp. 577, 578–593. Grant for sake of argument that the vendor of timber has a lien upon the product of his timber, and that we knew the stumpage was not paid and that we agreed to pay it, still we insist that this case must be reversed. Finke & Nasse v. Pike, 50 Mo. App. 567; Barton v. Sitlington, 128 Mo. 176. The testimony shows that these three creditors sold to King over three hundred thousand feet of timber, for all of which this judgment enforces payment out of, perhaps, fifty thousand feet of lumber, twenty thousand feet of which was made out of the timber of another, viz., Lynn. The testimony does not show that we got one

half as much lumber of King as he bought timber of these attaching plaintiffs. The evidence shows that others got some of the lumber. Are we to be required to pay the stumpage on lumber sold to others? Had the nine parts of stacks been full, and the twenty-one stacks attached contained according to the constable's return three thousand feet each or sixty-three thousand feet, then, as the average price paid for oak timber was $1.25, the stumpage against this lumber could have been only $79. But this judgment takes it all, or its full value as assessed by the court to pay not only its stumpage, but the stumpage of all timber sold to King, regardless of who got the lumber. There can be no valid lien or chattel mortgage in this state unless the same is acknowledged and recorded. R. S. 1889, sec. 5176; Kendall v. Bain, 55 Mo. App. 266; Hughes v. Menefee, 29 Mo. App. 200.

W. W. CORBETT and W. H. MILLER for respondent.

It will be observed that no instructions or declarations of law were asked on the part of either party, hence this court will presume where the facts are disputed that the court properly determined the issues. Harrington v. Minor, 80 Mo. 270; Cook v. Farrah, 105 Mo. 492; Benne v. Benne, 56 Mo. App. 504; Suddarth v. Robertson, 118 Mo. 286. The court doubtless found, as it was bound to do under the testimony, that the bills of sale, although absolute on their face, were only in fact instruments of writing, pledging the property to secure the money advanced, as shown therein, subject to the payment by the parties for the timber from which the lumber was made, and in this connection it makes no difference that the specific lumber replevied was not cut from timber taken directly from the land of the execution creditors. It

was impossible for the execution creditors to have followed the timber in the manner in which it was handled. King v. Reaves, 42 Mo. App. 168; White v. University Land Co., 49 Mo. App. 450; Zottlosen Tent Co. v. Bank, 57 Mo. App. 19; Caleb v. Day, 106 Mo. 278; King v. Greaves & Ruff, 51 Mo. App. 534. Under the decisions of this state it is proper to settle the equities of the parties in this form of action. Peters v. Lowenstein, 44 Mo. App. 406; Campbell Ptg. Press Co. v. Baker, 44 Mo. App. 324. This is what the court undertook to do in the case at bar. Plaintiffs must not only have the right of property, but it must be coupled with the right of possession, before they can maintain replevin, and in this case respondent insists that before appellants had the right to remove the lumber in question from this state they should have been required to pay that which they themselves had said was to be paid before the property became theirs. Cobbey on Replevin, p. 66, sec. 130; Gartside v. Nixon, 43 Mo. 138; Andrews v. Castican, 30 Mo. App. 29; Baker v. Campbell, 32 Mo. App. 529. In the case of Campbell Printing Press Company v. Baker, *supra*, the court uses the following language: "In this state the action of replevin is sufficiently flexible to adjust equities of this kind. The theory of the law is that if the defendant in such an action has a special interest in the property, or a lien upon it to secure a special sum and has possession of it, he has the right to hold it until that interest is satisfied, or that lien discharged; and if it is taken from him in replevin, he is entitled to judgment for the value of his interest."

BIGGS, J.—This is an action of replevin to recover the possession of a lot of lumber. The property was taken from the possession of the defendant, who as constable had seized it under three executions against

Allen G. King, and in favor of Martin Brothers, Furlong Brothers and W. C. Rhinehart, respectively.

The levies were made in September, 1896. The plaintiffs, who are doing business under the firm name of Russe & Burgess, claim title to the property under and by virtue of three bills of sale executed by King and dated respectively May 4, May 28, and July 20, 1896. The lumber was accepted and the bills of sale executed and delivered in pursuance of the following contract, to wit: "This agreement made on sixth day of April, 1896, between Russe & Burgess and Allen G. King.

STATEMENT.

"Witnesseth that said Russe & Burgess hereby agree to purchase of said King 120,000 feet of first and seconds plain red oak, and 80,000 feet of common plain red oak, to be sawed as Russe & Burgess may direct.

"It is mutually agreed between the parties that the above lumber shall be inspected by the Cairo rules of inspection.

"It is further agreed that as soon after the signing and delivering of this agreement, as the said King shall have cut and stacked the sum of 50,000 feet of said lumber in dimensions and qualities and kinds mentioned, he will notify Russe & Burgess, and it is made the duty of said Russe & Burgess to proceed either by one of their officers or agents and inspect or estimate the number of feet of said lumber, and upon the estimate of the number of feet of lumber, the said Russe & Burgess shall, as soon as practicable, pay to the said King $11.20 for firsts and seconds, $3.20 for commons per thousand feet for the lumber so stacked and estimated and delivered to and marked by the said Russe & Burgess. That upon the payment of $11.20 and $3.20 per thousand the title to all lumber so

EVIDENCE. stacked, inspected, estimated and marked shall immediately vest in the said Russe & Burgess free from all liens and incumbrances of every nature whatever, and said Russe & Burgess agree to pay the said King the sum of $4.80 per thousand feet, for all of said lumber which he shall haul and place upon barges or boats for them, to be in full for his services.

"It is agreed and understood that after the stacking and inspecting or estimate and payment of $11.20 and $3.20 per thousand feet as aforesaid, that the title to all of said lumber so estimated and paid for immediately and absolutely vests in Russe & Burgess, free from all liens, demands and claims of all persons whomsoever.

"It is hereby further agreed that the said King shall pay interest at 8 per cent per annum on all moneys paid, from time paid up to time the said lumber is removed. * * * Upon the removal of said lumber Russe & Burgess shall pay in cash to King all money due for sale of lumber or services rendered in loading the same, less 2 per cent for cash.

"The total amount to be paid for the lumber and loading the same shall be $16 for firsts and seconds, and $8 for commons per 1,000 feet."

In defense of his right to hold the property the defendant introduced evidence tending to establish these facts: King was operating a saw mill. He bought timber from Martin Brothers of the value of $79, Furlong Brothers of the value of $175.57, and Rhinehart of the value of $66.70, and that the judgments upon which the executions were issued were obtained upon these claims. The logs furnished by these parties, as well as those sold to King by others, were hauled to the mill, sawed into lumber, and the lumber intermingled and stacked together. Some of the lumber

levied upon came from logs furnished by the plaintiffs in the executions, but the amounts the evidence does not disclose. In purchasing the lumber the plaintiffs were notified of the claims of parties for logs furnished King, and they stated that they would apply a sufficient amount of the purchase money for the lumber to the discharge of these claims. The plaintiffs attempted to remove the lumber from the yard of the mill, where it was stacked and marked "Russe and Burgess," and the levies under the executions were then made.

The cause was submitted to the court without a jury. No instructions were asked or given and no exceptions saved as to the evidence. The court found the issues for the defendant. It found the value of the property to be something less than the amounts due under the executions and it entered the usual statutory judgment for the return of the property or the payment of its assessed value if the defendants should so elect. The plaintiffs have appealed and urge that under the conceded facts the judgment ought to have been for them.

Where was the title of the lumber when the levies were made? If it was in the plaintiffs, then the judgment is wrong. If there was evidence tending to prove that it was in King, then the judgment can be upheld. The attorneys for the appellants urged at length that the plaintiffs in the executions had no venders' lien or other claim on the lumber as security for their debts. That proposition is very clear, and the respondent concedes it. His attorneys attempt to justify the verdict and judgment upon the ground that there was evidence tending to prove that the sale of the lumber to plaintiffs was conditional and that until the purchase price was fully paid the title of the lumber remained in King. There was no such evidence. Adopting a view most favorable to the respondent the

Russe v. Hendricks.

evidence only tended to prove an agreement or under-standing between King and the plaintiffs that the debts due the parties who had sold logs to King should be paid out of the purchase money of the lumber. Besides if there was such testimony it could not be considered, for its effect would undoubtedly be to vary the written contract between King and the plaintiffs. It is undisputed that prior to the levies the lumber in question had been separated from other lumber; that it had been measured and accepted by the plaintiffs; that it had been marked as their property, and that the full purchase price had been paid, except for haul-ing it to the river, which had not been done. When the lumber was measured, accepted, marked and the first instal-ment of the purchase price paid, the written contract expressly provided that the title to the lumber so accepted should vest absolutely in the plain-tiffs. It is incompetent to vary or contradict this stipu-lation by oral testimony. It is clear we think that the judgment can not be upheld on this theory, and as none other is suggested, we must reverse it. It may be that the plaintiffs have rendered themselves personally liable for the debts of these execution creditors, but as the latter have no claims on the lumber itself, and as King has none, the defendant acquired no title or interest in it by virtue of the levies. It is true, as sug-gested by counsel, that in replevin suits the equities of the parties may be adjusted, but by this is meant only that all claims or liens on the *property itself* will be con-sidered and their priorities determined.

*WRITTEN con-tract: oral testi-mony incompe-tent to vary or contradict.*

With the concurrence of the other judges, the judgment of the circuit court will be reversed and the cause remanded. It is so ordered. Judge BLAND con-curs; Judge BOND dissents.